## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

Bijan Daneshvar,

        Plaintiff,

v.                                       Case No. 04-2212-JWL

Graphic Technology, Inc.,

        Defendant.

### MEMORANDUM AND ORDER

Plaintiff Bijan Daneshvar filed a pro se complaint against his former employer alleging numerous violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e et seq.[1]  In previous orders, the court dismissed for lack of subject matter jurisdiction several claims asserted by plaintiff and granted summary judgment in favor of defendant on other claims.  *See Daneshvar v. Graphic Tech., Inc*., 2006 WL 14565 (D. Kan. Jan. 3, 2006); *Daneshvar v. Graphic Tech., Inc*., 2006 WL 266603 (D. Kan. Feb. 1, 2006).   As a result, only one claim remains for resolution–plaintiff's claim that defendant paid plaintiff lower wages than it paid similarly situated non-Iranian employees–and this claim is the subject of defendant's second motion for summary judgment (doc. #108) which is presently before the court.   For the reasons explained below, defendant's motion is granted.

---

[1]Although plaintiff initially asserted claims against numerous defendants, the court has previously dismissed all defendants except for defendant Graphic Technology, Inc.

## I.      Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party.   Plaintiff is a United States citizen of Iranian descent and national origin.   During the duration of his employment with defendant, plaintiff worked as a press assistant.[2]   At the time plaintiff filed his charge of discrimination asserting that defendant paid plaintiff lower wages than it paid similarly situated employees, only five other press assistants were earning a higher hourly wage than plaintiff.[3]   One of these press assistants, Christopher Morgan, had a base rate of pay that was actually lower than plaintiff's base rate of pay; however, Mr. Morgan, unlike plaintiff, worked the night shift and, thus, earned a higher hourly wage than plaintiff due to a 5 percent pay differential afforded to all night-shift employees.   The other four press assistants who earned higher hourly wages than plaintiff–Marce Howard, Terry Stoner, Joel

[2]Plaintiff purports to controvert this fact, asserting that he had not worked as a press assistant since 1999.  As will be explained later, plaintiff has failed to raise a genuine issue of material fact concerning whether he was employed in the press assistant position throughout his employment.

[3]In his response, plaintiff contends that defendant's evidence concerning the wage information of its employees lacks foundation.  Defendant, then, attaches to its reply brief the affidavit of Jennifer Clary, its human resources manager, to lay additional foundation for the wage information provided in connection with defendant's motion.  Plaintiff moves to strike this affidavit (doc. 114) and the exhibits attached thereto on the grounds that a party is prohibited from raising new arguments or issues in a reply brief.  The motion is denied as each issue addressed in Ms. Clary's affidavit was raised in defendant's initial briefing and the affidavit is offered as an appropriate reply to plaintiff's response to defendant's statement of uncontroverted facts.  Moreover, plaintiff does not dispute (and the court readily concludes) that Ms. Clary's affidavit amply supports the wage information offered by defendant.

2

Haines and Travis Haralson–each accepted a demotion to the press assistant position and,[4] consistent with company policy, were paid the highest hourly wage within the press assistant grade level (Grade Level 16) because they had been demoted from higher grade level positions.[5] Plaintiff had never accepted a demotion or transfer to the press assistant position from a higher grade level position.   Putting these five employees aside, plaintiff was the highest paid first-shift press assistant.

## II.   Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."   Fed. R. Civ.

---

[4]Charlie Besch, defendant's Vice President of Operations during the relevant time period, avers that each of these employees accepted a demotion in order to retain his or her employment during a reduction in force.  Plaintiff complains that Mr. Besch's affidavit fails to establish that Mr. Besch has personal knowledge of "the personal motives as to why" each of the employees accepted a demotion to the press assistant position.  Plaintiff's contention fails to create a genuine factual dispute for trial.  Regardless of whether these employees accepted a demotion to retain his or her employment during a reduction in force (an issue which has no bearing on the court's resolution of defendant's motion), it remains undisputed that each employee did, in fact, accept a demotion to the press assistant position.

[5]Plaintiff asserts that the court should not consider the company policy referenced by Mr. Besch in his affidavit because Mr. Besch fails to describe the policy in any detail and fails to indicate whether the policy is a written policy or simply one of "custom and usage." Defendant, in response to this argument, has attached to its reply brief the affidavit of Jennifer Clary, defendant's human resources manager during the relevant time period.  Ms. Clary describes the policy as the court has described it here.  The affidavits of Mr. Besch and Ms. Clary are more than adequate to establish the existence of the policy and to support defendant's description of the policy.  Moreover, plaintiff offers no evidence to dispute the existence or description of the policy.  The court, then, may properly consider defendant's evidence of its policy.

P. 56(c).  Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.  *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).  An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."  *Id.* (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.  *Id.* (citing Fed. R. Civ. P. 56(e)).  To accomplish this, sufficient evidence pertinent to the material issue   "must be

4

identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.    Analysis

In his complaint, plaintiff asserts a claim of wage discrimination. That is, he contends that defendant paid him lower wages than it paid similarly situated non-Iranian employees. *See Amro v. Boeing Co.*, 232 F.3d 790, 798 (10th Cir. 2000) (person alleging a Title VII wage discrimination claim must show that he was paid less than other similarly situated non-protected class employees). As plaintiff has no direct evidence of discrimination, the court analyzes plaintiff's claim under the familiar burden-shifting framework first pronounced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Green v. New Mexico*, 420 F.3d 1189, 1192 (10th Cir. 2005). Pursuant to that framework, plaintiff must first establish the elements of a prima facie case of discrimination. *See id.* Once plaintiff establishes his prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If defendant meets its burden, then plaintiff must respond by showing that there is a genuine dispute of material fact as to whether defendant's asserted reasons for the challenged actions are pretextual. *Id.* If plaintiff presents evidence that defendant's proffered reasons for the employment decisions are pretextual, plaintiff can withstand a summary judgment motion and is

5

entitled to go to trial. *See id*.

For purposes of analyzing defendant's motion for summary judgment, the court assumes without deciding that plaintiff has established a prima facie case of discrimination. The court turns, then, to defendant's proffered reasons for its decisions concerning the wages paid to plaintiff and to similarly situated non-Iranian employees. According to defendant, Christopher Morgan, unlike plaintiff, worked on the night shift and earned a higher hourly wage than plaintiff based solely on a 5 percent pay differential paid to all night shift employees. Marce Howard, Terry Stoner, Joel Haines and Travis Haralson each accepted a demotion to the press assistant position to retain his or her employment during a reduction in force and, consistent with company policy, were paid the highest hourly wage within the press assistant grade level (Grade Level 16) because they had been demoted from higher grade level positions. Defendant has satisfied its "exceedingly light" burden to provide a nondiscriminatory reason for its decisions. *See Goodwin v. General Motors Corp*., 275 F.3d 1005, 1013 (10th Cir. 2002).

The burden then shifts to plaintiff to show that there is a genuine dispute of material fact as to whether defendant's asserted reasons for its pay decisions are pretextual. *See Green*, 420 F.3d at 1192. Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *See id.* at 1192-93 (quoting *Morgan v. Hilti, Inc*., 108 F.3d 1319, 1323 (10th Cir. 1997)). When assessing whether a plaintiff has made an appropriate showing of pretext, the court considers the evidence as a whole. *Annett*

*v. University of Kansas*, 371 F.3d 1233 (10th Cir. 2004) (citing *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir. 2002).

In an effort to establish pretext, plaintiff contends that he has not worked as a press assistant since 1999 and, accordingly, that defendant is not comparing plaintiff to the appropriate employees. Specifically, plaintiff avers that he suffered a work-related injury in 1999 and, at that time, was transferred to the "shrink wrap area" of the plant as an "operations assistant." He further avers that in January 2003, he was assigned the position of "finishing associate" and held that position until the termination of his employment in early 2004. Plaintiff also attaches what he alleges is a job description for the press assistant position and states that he did not perform any of those duties since 1999.

Defendant, in turn, submits the affidavit of Ms. Clary, *see supra* note 3, who states that any change in an employee's job position or title was marked by the completion of a form entitled "New Employee or Change of Status Notice." An employee also received this form to mark the receipt of pay increases. Plaintiff received seven Change of Status Notices between 1999 and the time of his discharge in 2004 and Ms. Clary has attached each of these forms to her affidavit. Each Change of Status form noted that plaintiff's job title was "Press Assistant." None of these forms reflected any other job position or title and, according to Ms. Clary, plaintiff never notified anyone that he believed the job position or title reflected on the forms was inaccurate.

Ms. Clary further avers that defendant does not have an "operations assistant" job position. According to Ms. Clary, shrink-wrapping duties fall within the job description of a press assistant, a description that she attaches to her affidavit. Ms. Clary avers, then, that plaintiff was never

7

"transferred" to the shrink wrap area and assigned a different position; rather, plaintiff, in performing the duties of a shrink wrapper, was performing duties specifically encompassed within the job description of a press assistant, which includes responsibility for "packaging, handling and palletizing product off press."[6] With respect to plaintiff's assertion that he became a "finishing associate" in January 2003, Ms. Clary avers that defendant never assigned plaintiff to that position. A finishing associate is a Grade 17 position, requiring a Change of Status form. No change of status form exists reflecting plaintiff's assignment to this position or a change to a Grade 17. Ms. Clary further indicates that defendant has had only one employee who has held the title of Finishing Associate; that employee resigned in March 2006 and the position has not been filled.

The court concludes that plaintiff's affidavit is insufficient to create a triable issue on plaintiff's job position. *See Salguero v. City Of Clovis*, 366 F.3d 1168, 1177 n.4 (10th Cir. 2004). The statements in plaintiff's affidavit are entirely conclusory and devoid of specific facts from which a jury could reasonably conclude that plaintiff in fact held a position with defendant other than the press assistant position. While plaintiff asserts that he did not perform any press assistant duties since 1999, he does not explain what duties he did perform (other than shrink wrapping duties which are performed by press assistants). He does not explain what duties he allegedly performed as a finishing associate and he does not direct the court to any corroborating

---

[6]As noted by defendant, the purported job description for a press assistant submitted by plaintiff is not authenticated by a supporting affidavit or deposition from anyone with personal knowledge of the facts contained therein. This document, then, fails to comply with Fed. R. Civ. P. 56(e) and the court cannot consider it.

evidence to support his bald assertion that he held other job titles. Moreover, his assertions are wholly contradicted by the specific facts set forth in Ms. Clary's affidavit.[7] Plaintiff, then, cannot survive summary judgment by virtue of these statements. *See id.* (statements in affidavit that were not supported in the record and did not reflect personal knowledge or corroborating evidence were insufficient to create genuine issue of material fact as to pretext).

Aside from his challenges to the competence of defendant's evidence on summary judgment that the court has already addressed, *see supra* notes 3-5, plaintiff offers no other arguments suggesting that defendant's proffered reasons for its pay decisions are unworthy of belief or otherwise pretextual. Thus, the court concludes that none of the five press assistants who earned higher hourly wages than plaintiff are similarly situated to plaintiff, as one worked the night shift and received the corresponding pay differential and the others accepted a demotion to the press assistant position and were thus paid the highest hourly wage within the press assistant grade level consistent with company policy. Because plaintiff has not shown that similarly situated employees received higher wages, his claim necessarily fails under Tenth Circuit precedent. *See Amro v. Boeing Co.*, 232 F.3d 790, 798 (10th Cir. 2000) (person alleging a Title VII wage discrimination claim must show that he was paid less than other similarly situated non-protected class employees). Summary judgment is warranted in favor of defendant on this claim.

---

[7]The court also finds it significant that while plaintiff moves to strike Ms. Clary's affidavit on the grounds that it raises new arguments and issues (an argument which the court has rejected), plaintiff does not dispute the substance of Ms. Clary's affidavit in any respect.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's second motion for summary judgment (doc. 108) is granted and plaintiff's complaint is dismissed in its entirety; plaintiff's motion to strike affidavit and supporting exhibits (doc. 114) is denied.

**IT IS SO ORDERED.**

Dated this 5th day of June, 2006, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge